IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN CARL BUTTOLPH,  :
        Petitioner,  :
             :   1:18-cv-2370
   v.  :
             :   Hon. John E. Jones III
MELINDA ADAMS, *et al.*,  :
        Respondents.  :

## MEMORANDUM

### September 10, 2020

Petitioner Steven Carl Buttolph ("Petitioner" or "Buttolph") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 4), accompanied by exhibits (Doc. 4-1 through 4-10) and a memorandum of law (Doc. 4-11). Buttolph is seeking relief from his plea of guilty to one count of murder in the third degree and sentence of ten to twenty years imprisonment entered in the Court of Common Pleas of Perry County, Pennsylvania on May 5, 2014.

The petition is ripe for disposition. For the reasons set forth below, the Court will deny the petition.

## I.    STATE COURT FACTUAL AND PROCEDURAL BACKGROUND

In its April 25, 2017 Memorandum addressing Buttolph's appeal, in which he challenges an order entered by the trial court on September 17, 2015, as well as the denial of his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546, the Superior Court of Pennsylvania set forth the

following background:

In the early morning hours of May 3, 1992, Edward Williams, an owner of an adult bookstore, found his store clerk, Steven V. Gosline, dead inside the store. In addition, he discovered a large sum of money was missing from the cash register. An autopsy revealed Gosline's cause of death as multiple traumatic injuries to the head and the manner of death as homicide. Police began an investigation.

Donald Shreffler, a friend of Gosline's, told police that two other individuals were in the store when he left the night before at 11:30 p.m. He identified Jeff Mayhew and "Steve," who was known as a customer at another adult bookstore. Steve was eventually identified as Appellant. Appellant was interviewed by police and admitted to being in the store on that night, but did not admit to being involved in Gosline's death.

Three years later, on January 23, 1995, Marcie Buttolph, Appellant's wife, contacted police and reported that Appellant told her that he killed Gosline. Appellant was charged in connection with Gosline's murder, but Marcie then refused to testify at the preliminary hearing. Accordingly, the charges were withdrawn.

In 2008, police again interviewed Marcie. She and Appellant were no longer married, as they had divorced in 1997. [n.2 In addition to telling police once again that Appellant killed Gosline, she informed police that Appellant regularly smoked Marlboro cigarettes sold in a red box. Marlboro cigarette butts had been found at the crime scene, and police ordered DNA testing of them. The results returned a "partial DNA profile consistent with" Appellant. Affidavit of Probable Cause, 2/20/2009, at 3.

Marcie also reported to police that Appellant told her 1) that he stabbed Gosline, but Gosline did not die so Appellant picked up a pipe and beat him to death; 2) that Appellant stole $1,500 from the store; 3) that if Marcie told anybody about it she would never see their son again; and 4) that he disposed of the murder weapon and his clothes in the Susquehanna River. *See* Motion to Suppress,

2

11/29/2011, at § 4.]

Marcie agreed to allow police to wiretap her phone conversations with Appellant in an attempt to learn more about his involvement in this murder. A number of those recorded conversations contained incriminating statements.

In February 2009, Appellant was arrested and charged with criminal homicide, robbery, and theft by unlawful taking. Appellant hired Attorney Jerry Russo to represent him. At Appellant's preliminary hearing, Marcie testified on cross-examination by Attorney Russo about Appellant's having admitted to her that he killed Gosline during the course of robbing the store. The charges were held for trial.

On November 29, 2011, Appellant filed a pre-trial motion to suppress testimony from Marcie, arguing that her testimony should be prohibited on the basis of the confidential communication marital privilege codified at 42 Pa.C.S. § 5914. On July 31, 2012, the trial court denied Appellant's motion. Appellant filed an appeal to this Court, and on November 26, 2013, this Court concluded that we lacked jurisdiction to entertain an appeal from this interlocutory order. *See Commonwealth v. Buttolph*, 91 A.3d 1296 (Pa. Super. 2013) (unpublished memorandum).

A jury was selected on April 29 and 30, 2014. On May 1, 2014, Appellant and the Commonwealth entered into a negotiated guilty plea agreement. Appellant pled guilty to third-degree murder in exchange for the Commonwealth's withdrawing the other charges. In addition, the Commonwealth agreed to recommend Appellant be sentenced to ten to 20 years of incarceration, the maximum sentence available for third-degree murder in 1992. Furthermore, the agreement provided that "unless [Appellant] is involved in criminal activity, extensive disciplinary action, or takes unwarranted action against th[e district attorney's office], [the district attorney] will not oppose his parole consideration at his minimum." N.T., 5/1/2014, at 5 (unnecessary capitalization omitted).

Appellant signed a written plea colloquy and the trial court conducted

a thorough on-the-record colloquy. The trial court pointed out specifically that Appellant was "giving up [his] right to challenge many aspects on appeal; like results of suppression motions, basically anything factually regarding this case[.]" *Id.* at 9 (unnecessary capitalization omitted). The trial court told Appellant that the only things he could challenge on direct appeal were "the voluntariness of [his] guilty plea, the jurisdiction of [the trial court] and the legality of [the] sentence." *Id.* at 10 (unnecessary capitalization omitted). The trial court accepted the plea and sentenced Appellant in accordance with his plea agreement.

On May 12, 2014, Appellant filed *pro se* a post-sentence motion challenging the discretionary aspects of his sentence. On May 13, 2014, the trial court denied Appellant's motion. [n.3 It is well-settled that where "[t]he trial court imposed the sentence Appellant negotiated with the Commonwealth[,] Appellant may not ... seek discretionary review of that negotiated sentence." *Commonwealth v. Reid*, 117 A.3d 777, 784 (Pa. Super. 2015). *See also Commonwealth v. O'Malley*, 957 A.2d 1265, 1267 (Pa. Super. 2008) ("One who pleads guilty and receives a negotiated sentence may not then seek discretionary review of that sentence.").] On May 21, 2014, [n.4 According to Appellant, he applied for a public defender on May 11, 2014.] court-appointed counsel from the office of the public defender, Attorney Barbara Wevodau, filed timely a notice of appeal on Appellant's behalf, which was docketed at 1464 MDA 2014. Attorney Wevodau then informed Appellant that after review of the file, along with Appellant's communications to her, she recommended he file a PCRA petition asserting claims of ineffective assistance of counsel. In addition, Attorney Wevodau notified the trial court that due to the caseload at the public defender's office, this case needed to be re-assigned to Attorney William Shreve. On November 24, 2014, the court issued an order appointing Attorney Shreve. On December 31, 2014, Attorney Shreve discontinued Appellant's direct appeal, and on February 23, 2015, Attorney Shreve filed a timely, counseled PCRA petition on Appellant's behalf.

On March 23, 2015, Attorney Shreve filed a petition to withdraw as counsel and no-merit letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.

4

Super. 1988) (*en banc* ). On April 8, 2015, the PCRA court issued a notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss the petition in 20 days without a hearing. The PCRA court also permitted Attorney Shreve to withdraw.

On June 4, 2015, Appellant *pro se* filed a motion requesting more time to respond to the PCRA court's Rule 907 notice. He also requested that his direct appeal rights be reinstated. On September 17, 2015, the PCRA court entered an order granting Appellant additional time to file a response to the Rule 907 notice. The PCRA court denied Appellant's request to reinstate his direct appeal.

On October 4, 2015, Appellant *pro se* filed an amended PCRA petition. On October 19, 2015, Appellant *pro se* filed a notice of appeal from the September 17, 2015 order. [n.5 This appeal, filed on October 19, 2015, was docketed in this Court over seven months later, on June 6, 2016, at 891 MDA 2016. It is not clear why the clerk of courts did not follow the mandates of Pa.R.A.P. 905, which provide that upon receipt of a notice of appeal, the clerk of courts shall transmit it to this Court.]  The PCRA court took no further action in this matter until March 22, 2016, when it dismissed Appellant's PCRA petition. Appellant timely filed a notice of appeal from that order, which was docketed at 892 MDA 2016. The PCRA court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925. Appellant filed a statement raising 34 issues. On July 26, 2016, the PCRA court filed a memorandum.

*Commonwealth v. Buttolph*, No. 891 MDA 2016, 2017 WL 1476315, at *1–3 (Pa.

Super. Ct. Apr. 25, 2017); Doc. 4-3.  With regard to the number of issues presented

for review, the Superior Court stated as follows:

Before we reach the issues presented by Appellant, we consider the PCRA court's conclusion that Appellant has violated Pa.R.A.P. 1925(b) by presenting 34 issues in his statement of errors complained of on appeal.7 See PCRA Court Opinion, 7/26/2016, at 1 (unnumbered). Based on the sheer number of issues set forth in this statement, the

PCRA court analogizes this case to our decision in *Kanter v. Epstein*, 866 A.2d 394 (Pa. Super. 2004). In *Kanter*, this Court held the defendants had waived all issues on appeal by raising 104 issues for review in violation of Pa.R.A.P. 1925(b)(4)(ii) ("The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." (emphasis added)). We held that "[b]y raising an outrageous number of issues, the [d]efendants have deliberately circumvented the meaning and purpose of Rule 1925(b) and have thereby effectively precluded appellate review of the issues they now seek to raise." *Kanter*, 866 A.2d at 401. We agree that the number of issues hampers our review. In addition to the number of issues in the statement, our review is further impeded by the fact that Appellant's briefs on appeal are not models of clarity. He raises numerous issues, sub-issues, and arguments within those issues, most of which are rambling and include citation to law irrelevant to the issue presented. Nevertheless, the PCRA Court attempted to address the primary issues it could identify, and we will endeavor to do the same. *See* PCRA Court Opinion, 7/26/2016, at 2–5 (unnumbered).

*Id*. at *4. The court considered the following issues:

"Appellant claims that Attorney Russo was ineffective by not objecting to Appellants guilty plea during the proceedings, which thereby permitted him to enter the plea unknowingly and involuntarily. *See* Appellant's Brief filed at 892 MDA 2016 (Appellant's Second Brief) at 13–19; 29–31. Specifically, Appellant argues that his plea colloquy was defective because the trial court did not inform him of all of the elements of third-degree murder, particularly malice. *Id.* at 13–15. Appellant also complains that he was never informed of the factual basis of the murder. *Id.* at 15–17." *Commonwealth v. Buttolph*, No. 891 MDA 2016, 2017 WL 1476315, at *5 (Pa. Super. Ct. Apr. 25, 2017)

"Appellant also claims that counsel was ineffective by coercing his guilty plea. *See* Appellant's Brief filed at 891 MDA 2016 (Appellant's First Brief) at 29–33; Appellant's Second Brief at 31–41)." *Id.* at *7.

"We now turn to the issue of whether either Attorney Russo or Attorney

Wevodau was ineffective by failing to file a post-sentence motion to withdraw Appellant's guilty plea. [n.10 omitted] *See* Appellant's First Brief at 16–21." *Id.*

"We now consider whether Attorney Shreve was ineffective for withdrawing Appellant's direct appeal and whether the PCRA court erred by not reinstating Appellant's direct appeal rights." [n.12 "Appellant also argues that Attorney Russo was ineffective for failing to file a direct appeal. *See* Appellant's First Brief at 13, 16–22. However, any prejudice that could have ensued from this failure was alleviated when Attorney Wevodau filed a direct appeal. Additionally, Appellant argues that Attorney Wevodau was ineffective both by abandoning him and in the way she handled the direct appeal. *Id.* at 14, 22–26. However, Appellant's rights were in no way impeded when Attorney Wevodau informed the court that she could no longer represent Appellant and that Attorney Shreve should be appointed. Additionally, Appellant's argument that Attorney Wevodau was ineffective for failing to file a concise statement of errors complained of on appeal is without merit because Attorney Shreve withdrew the direct appeal."]. *See* Appellant's First Brief at 11–15; 22–29. In support of these arguments, Appellant suggests that Attorney Shreve should have pursued issues related to Appellant's unknowing and involuntary guilty plea. See Appellant's First Brief at 27–33." *Id.* at *8.

"We now consider the numerous additional issues Appellant had with respect to Attorney Russo's representation of him up until Appellant pled guilty…. Appellant now claims that Attorney Russo was ineffective in his trial preparation; specifically he suggests that counsel did not obtain transcripts of the wiretapped phone conversations in a timely fashion and never obtained the original audio. See Appellant's Second Brief at 19–27. Appellant also suggests that Attorney Russo was ineffective for not spending adequate time preparing for this case and for not interviewing certain witnesses. *Id.* at 45–49. *See also id* at 49–59 (setting forth various things that Appellant claims that Attorney Russo did not do, as well as arguing that Attorney Russo delayed the case unnecessarily)." *Id.*

The Superior Court quashed the appeal of the trial court's September 17, 2015 Order because it did not dispose of all claims or all parties and "was not entered as a final order pursuant to Pa.R.A.P. 341(c)." *Id.* at *3. The court also affirmed the denial of Buttolph's PCRA petition. *Id.* at *9. The Pennsylvania Supreme Court denied Buttolph's petition for allowance of Appeal on November 14, 2017.

Buttolph initiated habeas corpus proceedings on September 19, 2018.

## II.   ISSUES PRESENTED FOR FEDERAL REVIEW

Buttolph seeks federal review of the following issues:

"Ground One:   Double Jeopardy/Illegal Re-arrest (Violation of Petitioner's Fourth, Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States)[.]" (Doc. 4, p. 4). Petitioner alleges the District Attorney rearrested him using neither new nor undiscoverable evidence and that trial counsel was ineffective in failing to prepare and present a "double jeopardy/illegal re-arrest motion…." (*Id.*).

"Ground Two:  Brady Violation (Violation of Petitioner's Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States)[.]"  (*Id.* at 6).  He alleges the District Attorney and Judge committed Brady violations and that trial counsel was ineffective in failing to prepare and pursue a motion to compel mandatory discovery. (*Id.*).

"Ground Three:  Speedy Trial Violation. (Violation of Petitioner's Fifth, Sixth, Eighth, and Fourteenth Amendments of the Constitution of the United States)[.]"  (*Id.* at 8).  He asserts that trial counsel was ineffective in continuing his case fifty-two times in sixty-four months and that the trial judge was aware that the continuances were excessive.

(*Id.*).

"Ground Four:   Sixth Amendment Violation, Denial of Counsel (Violation of Petitioner's Sixth, and Fourteenth Amendments of the Constitution of the United States)[.]"   (*Id.* at 10).   He contends the District Attorney and trial judge violated his right to counsel when they brought him before open court without his attorney present and that trial counsel was ineffective in failing to act and insure his constitutional rights were upheld.  (*Id.*).

"Ground Five:   Ineffective Assistance of Counsel (Violation of Petitioner's Sixth Amendment of the United States)[.]"   (*Id.* at 12). Included in this claim are the following errors:

    1.      Trial counsel elicited and published detrimental testimony;

    2.      Trial counsel allowed defective colloquy;

    3.      Trial counsel failed to investigate or interview any witnesses during his sixty-four months of pretrial incarceration; and

    4.      Trial counsel failed to inform him of all elements of third degree murder.

(*Id.* at 12, 13).

"Ground Six:  Judicial Misconduct (Violation of Petitioner's Fifth, and Eighth Amendments of the United States [Constitution]."  (*Id.* at 15). He alleges that the trial judge failed to inform him of his post guilty plea and post sentence rights.  (*Id.*).

## III.   **DISCUSSION**

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner in custody pursuant to the judgment of a state court to challenge the "fact or duration" of his confinement.  *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).  28 U.S.C. § 2254, provides, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b)(1) an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

> (A)   the applicant has exhausted the remedies available in the courts of the State;
>
> ...

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

Section 2254 clearly sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner.  *Cullen v. Pinholster*, 536 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014).  A federal court may consider such a petition only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a).  By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts.

Further, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975) (*per curiam*)."  *Estelle v. McGuire,* 502 U.S. 62, at 67–68 (1991).  A federal habeas court may not consider a petitioner's claims of state law violations; review is limited to issues of federal law. *See Estelle*, 502 U.S. at 67-68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Engle v. Isaac*, 456 U.S. 107, 120 n.19 (1982) ("If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable.").

## A.    Waiver

In considering Buttolph's PCRA appeal, which contained a myriad of claims, the Superior Court pointed out that " 'upon entering a guilty plea[,] [Appellant] waive[d] his right to challenge on appeal all non-jurisdictional defects except the legality of his sentence and the validity of his plea.' *Commonwealth v.*

*Rush*, 909 A.2d 805, 807 (Pa. Super. 2006)." *Commonwealth v. Buttolph*, 2017 WL 1476315, at *8.  This is in accord with settled Pennsylvania law which makes clear that by entering a guilty plea, the defendant waives his right to challenge on direct appeal all nonjurisdictional defects except the legality of the sentence and the validity of the plea. *Commonwealth v. Pantalion*, 957 A.2d 1267, 1271 (Pa.Super. 2008).

> Indeed, a defendant routinely waives a plethora of constitutional rights by pleading guilty, including the right to a jury trial by his peers, the right to have the Commonwealth prove his guilt beyond a reasonable doubt, and his right to confront any witnesses against him. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (knowing and voluntary guilty plea waives privilege against self-incrimination, right to jury trial, and right to confront one's accusers). Furthermore, a defendant is permitted to waive fundamental constitutional protections in situations involving far less protection of the defendant than that presented herein. [*See, e.g.*], *Peretz v. United States*, 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) ( [stating:] "The most basic rights of criminal defendants are ... subject to waiver"); *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ( [stating] sixth amendment right to counsel may be waived).

*Commonwealth v. Byrne*, 833 A.2d 729, 735–36 (Pa. Super.2003).

This is also in accord with United States Supreme Court precedent, which has unequivocally held that "[w]hen a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)

(pleading guilty implicates the Fifth Amendment privilege against self-incrimination, the Sixth Amendment right to confront one's accusers, and the Sixth Amendment right to trial by jury)." *United States v. Ruiz*, 536 U.S. 622, 628–29 (2002).   "[A] guilty plea represents a break in the chain of events which preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea…" *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).   "[A] plea of guilty, voluntarily and understandingly made, constitutes a waiver of nonjurisdictional defects and defenses, including claims of violation of constitutional rights prior to the plea." *See Ramdass v. Angelone*, 530 U.S. 156, 167 (2000).

During the plea colloquy hearing, Buttolph indicated that he understood that by pleading guilty, he was giving up of his presumption of innocence and his right to a jury trial.  (Doc. 21-2, p. 7).  The trial court further advised as follows:  "Do you understand that by entering this Guilty Plea, you are giving up your right to challenge many aspects on Appeal; like results of Suppression Motions, basically anything factually regarding this case?  I mean, you are almost left to challenge, on

Direct Appeal at least, the voluntariness of your Guilty Plea, the jurisdiction of this

Court, and the legality of your Sentence."  (*Id.* at 9, 10).  He responded "Yes, sir."

(*Id.* at 10).  Trial counsel added the following:

> MR. RUSSO:     I—if I please the Court, I just want to be certain that – and I believe it was covered; but out of an abundance of caution, there was litigation in the nature of, I believe, a Suppression Motion, but in involved the pre-trial effort to exclude from testimony of Marci Piazza concerning spousal communication.
>
> That issue was raised in pre-trial pleadings.  It was litigated before Senior Judge Quigley.  It was then raised at the Superior Court in advance of trial.  The Superior Court has sent the matter back essentially saying it is not timely, that the matter can be raised if there is a conviction and the Commonwealth introduced that evidence at trial.
>
> I want to be certain – and I believe he is; but I want to be certain that the record is abundantly clear that Mr. Buttolph understands that that issue is no longer preserved for appellate review following the entry of a Guilty Plea, along with any other matters that could have been raised procedurally before – and I am talking about Motions in Limine that could have been raised prior to the beginning of trial on Monday.
>
> THE COURT:     Do you understand all of that, sir?
>
> MR. BUTTOLPH: Yes.
>
> THE COURT:     And that is what I was getting about by Suppression Motions or preserving anything.

By entering the Guilty Plea, you are giving up your right to challenge anything factually about the case that you admitted to today or to challenge any of the legal rulings that have been made thus far.

Do you understand that?

MR. BUTTOLPH: Yes. Sir.

\*\*\*

MR. RUSSO:     The last matter, if I – if I may, Your Honor, you – you correctly stated that he would retain three areas available to him for appellate review notwithstanding the entry of a Guilty Plea.  That would be the voluntariness of his Guilty Plea, the jurisdiction of this Court, and the legality of this Sentence.

\*\*\*

THE COURT:     Mr. Buttolph, do you have any questions?

MR. BUTTOLPH: No sir.

(Doc. 21-2, pp. 10, 11).

Additionally, in his written Plea Agreement, he indicated that he understood

the following question:

9.     There is very little that you can appeal after a guilty plea.  You cannot appeal the fact that you are guilty.  You cannot appeal on the basis that your rights have been violated.  You can only appeal the following things:

(a)  That you did not understand what you were doing when you pled

guilty.

(b)  That the Perry County Court did not have jurisdiction over your case.

(c)  Whether your lawyer was effective.

(d)  Whether your sentence was lawful.

(Doc. 21-13, p. 3).

Therefore, by pleading guilty, Buttolph waived the right to challenge various constitutional violations that arose prior to the entry of the guilty plea including the *Brady* claims in Ground Two, the Speedy Trial claims in Ground Three, and the ineffective assistance of trial claims, unrelated to the guilty plea proceedings, which he raised in Ground Four and Grounds Five (1) and (3).

**B.     Exhaustion and Procedural Default**

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus, unless the petitioner has first satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b).  The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971).  The habeas statute codifies this principle by requiring that a petitioner exhaust available remedies in state court, meaning a state prisoner must

"fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard*, 404 U.S. at 275 (1971); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. *Picard*, 404 U.S. at 278; *see also McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must present both "factual and legal substance" of claim to state courts). Mere reliance of state and federal claims on the same constitutional provision does not render the two claims substantially equivalent. *See Brown v. Cuyler*, 669 F.2d 155 (3d Cir. 1982); *Zicarelli v. Gray*, 543 F.2d 466 (3d Cir. 1976). Both the legal theory and the facts on which a federal claim rests must have been presented to the state courts. *See Picard*, 404 U.S. at 277; *Brown*, 669 F.2d at 158–61.

Additionally, a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. *See, e.g., Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed. 158 (1935); *Klinger v. Missouri*, 13 Wall. 257, 263, 20 L.Ed. 635 (1872). This rule applies whether the state law ground is substantive or procedural. *See, e.g., Fox Film, supra; Herndon v. Georgia*, 295 U.S. 441, 55 S.Ct. 794, 79 L.Ed. 1530 (1935)." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), holding modified by *Martinez v. Ryan*, 566 U.S. 1 (2012).  The requirements of "independence" and "adequacy" are distinct.  *Johnson v. Pinchak*, 392 F.3d 551, 557-59 (3d Cir. 2004). State procedural grounds are not independent, and will not bar federal habeas relief, if the state law ground is so "interwoven with federal law" that it cannot be said to be independent of the merits of a petitioner's federal claims. *Coleman*, 501 U.S. at 739-40. A state rule is "adequate" for procedural default purposes if it is "firmly established and regularly followed." *Johnson v. Lee*, ⸺ U.S. ⸺, 136 S. Ct. 1802, 1804, 195 L.Ed.2d 92 (2016) (per curiam) (citation omitted).  These requirements ensure that "federal review is not barred unless a habeas petitioner had fair notice of the need to follow the state procedural rule," and that "review is foreclosed by what may honestly be called 'rules' ... of general applicability[,]

rather than by whim or prejudice against a claim or claimant." *Bronshtein v. Horn*, 404 F.3d 700, 707-08 (3d Cir. 2005).  "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court.  The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000).

The failure to properly present claims to the state court generally results in a procedural default. *Lines v. Larkin*, 208 F.3d 153, 150-60 (3d Cir. 2000).  "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'  28 U.S.C. § 2254(b).  In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default.  *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)." *McCandless*, 172 F.3d at 260.

To demonstrate "cause" for a procedural default, a petitioner must point to

some objective external factor which impeded his efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards*, 529 U.S. at 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

1.    <u>Ground One</u>

In his first ground, Buttolph alleges that trial counsel was ineffective in failing to challenge his "rearrest" on the ground that it violated protections afforded by the double jeopardy clause.  (Doc. 1).  He cites the district attorney's action in rearresting him "using evidence that was neither new nor undiscoverable at the time of the dismissal of charges at the first preliminary hearing, and claims that trial counsel was ineffective in failing to prepare, pursue, and present a double jeopardy/illegal re-arrest motion which led to [his] guilty plea."  (Doc. 1, p. 6).  He asserts in his memorandum of law that he exhausted the claim during PCRA proceedings. but qualifies this argument by stating:

> Though double jeopardy was not specifically mentioned, Petitioner alleged a Constitutional violation and further argued that he was re-arrested for the same offense without new evidence.  Petitioner also cited <u>Blackledge v. Perry</u>, 417 US 21 (1974) and <u>Comm.v. Moore</u>, 749 A.2d 505 (2000) in support of his claim both of which deal with double jeopardy.  As such, this claim has been exhausted by citing state and federal cases employing constitutional analysis, 'assertion of the claim so particular as to call to mind a specific right protected by the Constitution' and 'allegation of a pattern of facts that is well within the mainstream of constitutional litigation.' <u>McCandless</u>, *supra.*"

(Doc. 4-11, p. 9 ). Respondents counter that the claim is procedurally defaulted because Buttolph did not include it in either his PCRA petition or his "Motion to Prove Merit to PCRA."  (Doc. 22, p. 3).  Respondents also note that the Superior Court made no reference to such a claim.  (*Id.*).

In Buttolph's brief in support of his appeal from the denial of PCRA relief (Doc. 21-6), under the heading "Trial Counsel's Ineffective Assistance of Counsel", there appear four questions for review:  1. Trial counsel's failure to meet with him for twenty-three months of pretrial incarceration; 2. Trial counsel's elicitation and publication of detrimental inculpatory testimony; 3. Trial counsel's failure to investigate witnesses and claims prior to trial, and 4. Trial counsel's violation of his due process rights based on the continuation of his case sixty-four times.  (*Id.* at p. 15).  He does not reference double jeopardy or illegal rearrest.  Although he cites Blackledge v. Perry in subsection 10 (F) of his appellate brief, it is simply a statement of law with no connection to the double jeopardy or illegal rearrest argument he now raises.  Specifically, at the conclusion of this argument that trial counsel failed to investigate witnesses and "all reasonable lines of defense," as well as trial counsel's failure to secure his pretrial release, he provides the following:  "Blackledge v. Perry, 384 US 436 [ ] (1974) Which goes to the very power of the State to bring the defendant into Court to answer to the charges brought against him.  Appellant asserts he should never have been haled into court to face felony charges at all.  See Miranda v. Arizona, 384 U.S. 436 [ ] (1966)."  (*Id.* at 57-63).

As stated *supra*, the requirement that state courts must be given a full and

fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, mandates that the claim brought in federal court be the substantial equivalent of that presented to the state courts. *Picard*, 404 U.S. at 278; *see McCandless*, 172 F.3d at 261.  Both the legal theory and the facts on which a federal claim rests must have been presented to the state courts. *See Picard*, 404 U.S. at 277; *Brown*, 669 F.2d at 158–61.  Buttolph has failed to fairly present the claim that counsel was ineffective in failing to challenge his arrest on double jeopardy grounds to the state courts and state procedural rules bar him from seeking further relief in state courts.

Although the exhaustion requirement is satisfied because there is an absence of available State corrective process, the claim is procedurally defaulted and we may not consider the merits unless Buttolph establishes cause and prejudice or a fundamental miscarriage of justice to excuse the default.  We have reviewed Buttolph's filings and he has failed to identify some objective external factor which prevented him from complying with the state's procedural rules in presenting this claim and he does not demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law.  Nor is there any argument or indication that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*,

477 U.S. at 496.  Federal review of the claim is foreclosed.

       2.    <u>Ground Six</u>

In his sixth ground, Buttolph alleges that the trial judge failed to inform him of his post-guilty plea and post-sentence rights during the guilty plea colloquy. Pennsylvania requires the following when challenging a guilty plea:

> A defendant wishing to challenge the voluntariness of a guilty plea on direct appeal must either object during the plea colloquy or file a motion to withdraw the plea within ten days of sentencing. Pa.R.Crim.P. 720(A)(1), (B)(1)(a)(i). Failure to employ either measure results in waiver. *Commonwealth v. Tareila*, 895 A.2d 1266, 1270 n. 3 (Pa.Super.2006). Historically, Pennsylvania courts adhere to this waiver principle because "[i]t is for the court which accepted the plea to consider and correct, in the first instance, any error which may have been committed." *Commonwealth v. Roberts*, 237 Pa.Super. 336, 352 A.2d 140, 141 (1975) (holding that common and previously condoned mistake of attacking guilty plea on direct appeal without first filing petition to withdraw plea with trial court is procedural error resulting in waiver; stating, "(t)he swift and orderly administration of criminal justice requires that lower courts be given the opportunity to rectify their errors before they are considered on appeal"; "Strict adherence to this procedure could, indeed, preclude an otherwise costly, time consuming, and unnecessary appeal to this court").

Likewise:

> Normally, issues not preserved in the trial court may not be pursued before this Court. Pa.R.A.P. 302(a). For example, a request to withdraw a guilty plea on the grounds that it was involuntary is one of the claims that must be raised by motion in the trial court in order to be reviewed on direct appeal. Similarly, challenges to a court's sentencing discretion must be raised during sentencing or in a post-sentence motion in order for this Court to consider granting allowance of appeal. Moreover, for any claim

that was required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court. Thus, even if an appellant did seek to withdraw pleas or to attack the discretionary aspects of sentencing in the trial court, the appellant cannot support those claims in this Court by advancing legal arguments different than the ones that were made when the claims were preserved.

*Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa. Super. 2008), appeal denied, 601 Pa. 696, 972 A.2d 521 (2009).

Further, a defendant who attempts to withdraw a guilty plea after sentencing must demonstrate prejudice on the order of manifest injustice before withdrawal is justified. *Commonwealth v. Muhammad*, 794 A.2d 378, 383 (Pa.Super.2002). "A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently." *Id*...

Instantly, Appellant cannot obtain review of his claim on direct appeal because he failed to preserve it properly by either objecting during the plea colloquy or filing a post-sentence motion to withdraw the plea. See Pa.R.Crim.P. 720(B)(1)(a)(i). Accordingly, we decline to review Appellant's challenge to the validity of his plea.

*Com. v. Lincoln*, 2013 PA Super 177, 72 A.3d 606, 609–11 (2013), opinion after reinstatement of appeal, 179 A.3d 573 (Pa. Super. Ct. 2017), for text, *see Commonwealth v. Lincoln*, No. 3632 EDA 2003, 2017 WL 4679656 (Pa. Super. Ct. Oct. 18, 2017). Waiver applies even in cases, as here, where the petitioner never obtained any direct appellate review of his conviction or sentence. *See Commonwealth v. Eaddy*, 419 Pa.Super. 48, 614 A.2d 1203, 1207-08 (1992). Where there is a waiver in state court, federal habeas relief is barred. *See, e.g.,*

*Jones v. Lavan*, 2002 WL 31761423, at *2-3 (E.D.Pa. Dec.9, 2002). Because Buttolph failed to raise the issue that the trial judge erred in not informing him of his post-guilty plea and post-sentence rights during the guilty plea colloquy in the trial court post-guilty plea, or on direct appeal, he is precluded from raising the issue in federal habeas proceedings.

Although the exhaustion requirement is satisfied because there is an absence of available State corrective process, the claim is procedurally defaulted. Buttolph fails to identify some objective external factor which prevented him from complying with the state's procedural rules in presenting this claim and he does not demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. And there is no indication that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496. In fact, review of the guilty plea colloquy reveals that the trial judge advised Buttolph "[y]ou and your attorney would have 10 days from today's date to file any Post Sentence Motions. If you don't file any Post Sentence Motions, you will have 30 days from today to file an Appeal to the Superior Court. But if you do file a Post Sentence Motion, you will have 30 days from when that Post Sentence Motion is decided in order to file your appeal to the Superior Court. Do you understand that?" (Doc. 21-2, pp.

19, 20).  Buttolph responded "Yes, sir."  (*Id.* at 20). The trial court also advised

him that if he chose to pursue PCRA relief, he would have the right to court-

appointed counsel.  (*Id.*).  There is no grounds on which to excuse the procedural

default.  We are precluded from considering this claim.

### C.    Adjudication of Claims on the Merits

Remaining for disposition are two ineffective of counsel claims raised in the

Ground Five, both of which were adjudicated on the merits during the PCRA

proceedings.  "In considering a § 2254 petition, we review the 'last reasoned

decision' of the state courts on the petitioner's claims." *Simmons v. Beard*, 590

F.3d 223, 231–32 (3d Cir. 2009) (citing *Bond v. Beard*, 539 F.3d 256, 289–90 (3d

Cir. 2008) ). Thus, "[w]e review the appellate court decision, not the trial court

decision, as long as the appellate court 'issued a judgment, with explanation,

binding on the parties before it.' " *Burnside v. Wenerowicz*, 525 F. App'x 135, 138

(3d Cir. 2013).  However, when the highest state court that considered the claim

does not issue a reasoned opinion, we "look through" that decision to the last

reasoned opinion of the state courts, and we apply a rebuttable presumption that

the higher court adopted the same reasoning as that set forth by the lower court.

*Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief

functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181(internal quotation marks and citation omitted). The burden is on Buttolph to prove entitlement to the writ. *Id.*

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[A] state court decision reflects an 'unreasonable application of such law' only 'where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents,' a standard the Supreme Court has advised is 'difficult to meet' because it was 'meant to be.' [*Harrison v.*] *Richter*, 562 U.S. 86, [ ] 102, 131 S.Ct. 770. As the Supreme Court has cautioned, an 'unreasonable application of federal law is different from an incorrect application of federal law,' *Richter*, 562 U.S. at 101, 131 S.Ct. 770 (quoting *Williams*, 529 U.S. at 410, 120 S.Ct. 1495), and whether we 'conclude[ ]

in [our] independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly' is irrelevant, as AEDPA sets a

higher bar.  *Williams*, 529 U.S. at 411, 120 S.Ct. 1495." *Mathias v. Superintendent*

*Frackville SCI*, 876 F.3d 462, 476 (3d Cir. 2017).  A decision is based on an

"unreasonable determination of the facts" if the state court's factual findings are

objectively unreasonable in light of the evidence presented to the state court.

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an

application for a writ of habeas corpus by a person in custody pursuant to the

judgment of a State court, a determination of a factual issue shall be presumed to

be correct. The applicant shall have the burden of rebutting the presumption of

correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

We now turn to the merits of Buttolph's claim that trial counsel provided

ineffective assistance during the guilty plea process.  The clearly established

ineffective assistance of counsel standard as determined by the Supreme Court of

the United States is as follows:

> Ineffective assistance of counsel claims are "governed by the
> familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S.
> 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Shelton v. Carroll*, 464
> F.3d 423, 438 (3d Cir. 2006) (citing *Wiggins v. Smith*, 539 U.S. 510,
> 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). For AEDPA purposes,
> the *Strickland* test qualifies as "clearly established Federal law, as

determined by the Supreme Court." *Williams*, 529 U.S. at 391, 120 S.Ct. 1495. Under *Strickland*, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687, 104 S.Ct. 2052.  For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688, 104 S.Ct. 2052. This review is deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....

> *Id.* at 689, 104 S.Ct. 2052

Not every "error by counsel, even if professionally unreasonable, ... warrant[s] setting aside the judgment of a criminal proceeding." *Id.* at 691, 104 S.Ct. 2052. "Even if a defendant shows that particular errors of counsel were unreasonable, ... the defendant must show that they actually had an adverse effect on the defense"; in other words, the habeas petitioner must show that he was prejudiced by counsel's deficient performance. *Id.* at 693, 104 S.Ct. 2052. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding.... In every case the court should be concerned with whether ... the result of the particular proceeding is unreliable because of a

> breakdown in the adversarial process that our system counts on to
> produce just results." *Id.* at 696, 104 S.Ct. 2052.

*Rainey v. Varner*, 603 F.3d 189, 197–98 (3d Cir. 2010).

When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

The Superior Court set forth the following ineffective assistance of counsel standards of review:

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.
>
> The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness. *Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa. Super. 2010) (internal citations omitted).

*Commonwealth v. Buttolph*, 2017 WL 1476315, at \*4–5.  The Third Circuit has previously held that the very ineffectiveness assistance of counsel test relied upon by the Superior Court is not contrary to the Supreme Court's *Strickland* standard.  *See Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000).

      1.    <u>Grounds Five (2) and (4)</u>

Buttolph's argument concerning the ineffective assistance of counsel during the guilty plea colloquy process is two-fold.  He first argues that counsel was ineffective in failing to explain all elements of the offense of third-degree murder insisting that he "was never informed as to what 'malice' entails related to a third-degree murder charge.  Therefore, the plea cannot be considered knowingly and voluntarily entered if [he] was not informed of the nature of the charges and any conclusion reached by the state courts which does not concur with this analysis is contrary to or involves an unreasonable application of <u>Mabry v. Johnson</u>, 467 US 504 [ ] (1984) and <u>McCarthy v. United States</u>, 394 US 459 [ ] (1969)."  (Doc. 4-11, p. 19).  He next asserts that the plea colloquy was defective for a multitude of reasons, including that he was never informed of the factual basis of the plea, and that counsel was ineffective in failing to object to the trial court's deficient plea colloquy.  (*Id.* at p. 22).  The claims raised here essentially mirror those raised in the PCRA appellate proceedings.  *Commonwealth v. Buttolph*, 2017 WL 1476315,

at *5.

In evaluating trial counsel's effectiveness, the Superior Court focused on whether the underlying claim, the validity of the guilty plea, had arguable merit. The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A guilty plea may be constitutionally infirm if a defendant failed to understand the constitutional rights he was waiving by pleading guilty or had an incomplete understanding of the charges lodged against him. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976). *See also Boykin v. Alabama*, 395 U.S. 238, 242 (1969) (noting that plea must be made with "sufficient awareness of the relevant circumstances and likely consequences"). Significantly, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations made in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

Initially, the Superior Court noted that "[c]entral to the question of whether [a] defendant's plea was entered voluntarily and knowingly is the fact that the defendant know and understand the nature of the offenses charged in as plain a

fashion as possible…. [A] guilty plea is not a ceremony of innocence, it is an

occasion where one offers a confession of guilt. Thus…a trial judge [and by

extension, plea counsel] is not required to go to unnecessary lengths to discuss

every nuance of the law regarding a defendant's waiver of his right to a jury trial in

order to render a guilty plea voluntary and knowing. *Barndt*, 74 A.3d at 192-93

(Pa. Super. 2013)(citations and quotation marks omitted)." *Id.* The court then

recited the following standards of review:

> In considering whether a guilty plea colloquy is defective, we bear in
> mind the following.
>
> > The Pennsylvania Rules of Criminal Procedure mandate pleas be
> > taken in open court and require the court to conduct an on-the-
> > record colloquy to ascertain whether a defendant is aware of his
> > rights and the consequences of his plea. Under Rule 590, the court
> > should confirm, *inter alia*, that a defendant understands: (1) the
> > nature of the charges to which he is pleading guilty; (2) the factual
> > basis for the plea; (3) he is giving up his right to trial by jury; (4)
> > and the presumption of innocence; (5) he is aware of the
> > permissible ranges of sentences and fines possible; and (6) the
> > court is not bound by the terms of the agreement unless the court
> > accepts the plea. The reviewing [c]ourt will evaluate the adequacy
> > of the plea colloquy and the voluntariness of the resulting plea by
> > examining the totality of the circumstances surrounding the entry
> > of that plea. Pennsylvania law presumes a defendant who entered
> > a guilty plea was aware of what he was doing, and the defendant
> > bears the burden of proving otherwise.
>
> *Commonwealth v. Kpou*, 153 A.3d 1020, 1023–24 (Pa. Super. 2016)
> (internal citations and quotation marks omitted). "[A] defendant is
> bound by the statements which he makes during his plea colloquy."
> *Commonwealth v. Barnes*, 687 A.2d 1163, 1167 (Pa. Super. 1996)

(citations omitted). As such, a defendant may not assert grounds for withdrawing the plea that contradict statements made when he entered the plea. *Id.* (citation omitted).

*Commonwealth v. Buttolph*, 2017 WL 1476315, at *5–6. These standards of review wholly comport with the Supreme Court standards.

The Superior Court quoted the plea colloquy transcript and conducted an in depth analysis of the colloquy:

> The trial court asked the following questions, in relevant part, about the nature of the charges and the factual basis of his plea.
>
> THE COURT: Do you understand the nature of the charges to which you are pleading guilty?
>
> [Appellant:] Yes, sir.
>
> THE COURT: Do you understand the factual basis to which you are pleading guilty?
>
> [Appellant:] Yes, sir.
>
> THE COURT: And do you understand that the crux of that factual basis is that on May 2nd, or into May 3rd, of 1992, that you killed a Donald V. Gosline at an adult book store? [ ]
>
> [Appellant:] Yes, sir.
>
> * * *
>
> THE COURT: Is there any reason you would not understand what you're doing today?
>
> [Appellant:] No, sir.

THE COURT: Okay. And by entering this guilty plea, are you admitting to the killing of Donald Gosline?

[Appellant:] Yes, sir.

N.T., 5/1/2014, at 7, 10 (unnecessary capitalization omitted).

Trial counsel then took great pains to ensure Appellant understood the consequences of what he was doing.

[ATTORNEY RUSSO:] With respect to the voluntariness of [Appellant's] plea, I did want the court to be aware—and I believe [Appellant] would confirm this—that, not only over the last two days personally but also by telephone, he has discussed the plea offers with myself; with our investigator, Skip Gochenour, who is present in the court with us today; and as well to my partner, Joseph Sembrot, who handled most of the appellate work with respect to the issue that I had just briefly discussed with the Court; as well as to Joshua Lock, who is of counsel to our firm.

I can't articulate the hours that were spent discussing the various issues attendant to the plea; but [Appellant], over the past week to two weeks, has had the benefit of the counsel of each of us.

I would also state—and I believe he would confirm this as well—he has also discussed the plea offer with his family, his mother and his father, both of whom are en route from Texas now to Pennsylvania. They were anticipating arriving over the weekend to be here for trial. But I know that he has had the benefit of speaking to both of his parents before this afternoon's proceeding. And I just wanted the Court to be aware of those aspects of the plea as well.

THE COURT: [Appellant], do you have any questions?

[Appellant:] No, sir.

THE COURT: Are you satisfied that your plea is knowing, intelligent, and voluntary?

[Appellant:] Yes, sir.

N.T., 5/1/2014, at 12–14 (unnecessary capitalization omitted). [n.8 In addition to this oral colloquy, Appellant initialed, signed, and dated a written guilty plea colloquy which was made part of the certified record. *See* Plea Agreement, 5/6/2014. In that colloquy, Appellant acknowledged, *inter alia*, that he understood the nature of the charges against him and had discussed the elements of the crimes with his attorney.].

"Our Supreme Court has repeatedly stressed that where the totality of the circumstances establishes that a defendant was aware of the nature of the charges, the plea court's failure to delineate the elements of the crimes at the oral colloquy, standing alone, will not invalidate an otherwise knowing and voluntary guilty plea." *Commonwealth v. Morrison*, 878 A.2d 102, 107 (Pa. Super. 2005). "Whether notice [of the nature of the charges] has been adequately imparted may be determined from the totality of the circumstances attendant upon the plea[.]" *Id.*

Instantly, Appellant's argument that trial counsel should have objected to the guilty plea colloquy as being insufficient is wholly unsupported by the record. Appellant's knowledge of and participation in this litigation is extensive, going back to his first arrest in 1995. After Appellant was arrested for a second time in 2009, he participated in a preliminary hearing and litigated extensively a motion to suppress prior to the entry of his guilty plea in 2014. Moreover, at the time he entered into the guilty plea, Appellant had already picked his jury and trial was scheduled to commence imminently. For Appellant to claim now that he was unaware in any respect of either the nature of the charges against him or of the elements of third-degree murder is simply incredible. Accordingly, we hold Attorney Russo was not ineffective by failing to object during Appellant's guilty plea colloquy. Thus, Appellant has not demonstrated counsel's actions or inactions resulted in his entering a guilty plea unknowingly or involuntarily.

*Commonwealth v. Buttolph*, 2017 WL 1476315, at *5–7.

During the plea hearing, the trial court recited the permissible ranges of his sentence, highlighted the relinquishment of various constitutional rights and challenges on appeal, confirmed that he was satisfied with counsel's representation, discussed, in depth, the contents of the written plea agreement and the fact that he executed the agreement with full understanding and answered every question truthfully and honestly, and affirmed that there was no reason that he would not understand the proceedings.  The Superior Court thoroughly reviewed the guilty plea hearing transcript during which Buttolph conceded that the crux of the factual basis of the third-degree murder to which he was pleading guilty was "that on May 2nd, or into May 3rd, of 1992, that [he]  killed a Donald V. Gosline at an adult book store[]" in Perry County at the corners of Routes 11 and 15 and 104, and admitted to the killing of Donald V. Gosline at that date, time and place identified.  (Doc. 21-22, pp. 7, 8, 10).  The court also noted that he initialed, signed, and dated a written guilty plea colloquy which was made part of the certified record in which he acknowledged, *inter alia*, that he understood the nature of the charges against him and had discussed the elements of the crimes with his attorney.  In considering the "totality of the circumstances," the court found that Buttolph's knowledge of, and participation in, the criminal proceedings to be "extensive"  and for him to claim he "was unaware in any respect of the charges

against him or the elements of the third-degree murders is simply incredible."
*Commonwealth v. Buttolph*, 2017 WL 1476315, at 7.  The Superior Court's finding
that Buttolph failed to demonstrate that counsel's actions or inactions resulted in
him entering an unknowing, unintelligent, and involuntary plea of guilty to third-
degree murder, is a reasonable application of clearly established federal law.

Buttolph also argues that the Superior Court's decision is an unreasonable
determination of the facts.  Whether a guilty plea is voluntary for purposes of the
United States Constitution is a question of federal law, but the determination of the
historical facts surrounding the plea is subject to the deferential "presumption of
correctness" found in Title 28 U.S.C. § 2254(d).  *Marshall v. Lonberger*, 459 U.S.
422, 431(1983); *see also Zilich*, 36 F.3d at 320. A habeas petitioner challenging the
knowing and voluntary nature of his or her guilty plea faces a heavy burden. *Zilich
v. Reid*, 36 F.3d 317, 320 (3d Cir. 1994).

Review of the guilty plea hearing transcript reveals that the Superior Court
accurately depicted what transpired during the guilty plea hearing.  Buttolph
indicated that he understood the nature of the charges against him and
unequivocally admitted to the killing of Donald V. Gosline.  (Doc. 21-2, pp. 7, 8,
10).  He confirmed that the understood that on direct appeal he was only able to
challenge the voluntariness of the guilty plea, the jurisdiction of the court, and the

legality of his sentence.  (*Id.* at 10).  Buttolph indicated that he was satisfied that

his plea was knowing, intelligent, and voluntary.  (*Id.* at pp. 13, 14).  After

imposing sentence, the court advised him that he had ten days to file any post-

sentence motions, thirty days to file an appeal and one year from completion of an

appeal to file a PCRA petition.  (*Id.* at 19, 20).  He then confirmed that no other

promises had been made to him.

      Trial counsel took additional steps during the colloquy.  He placed on the

record a supplemental agreement that the state would not oppose Buttolph's parole

eligibility upon reaching his mandatory minimum sentence.  (Doc. 21-2, pp. 5, 6).

He clarified on the record that Buttolph understood that he was waiving the right to

continue his challenge to a heavily litigated suppression motion concerning the

testimony of his ex-wife, and all factual challenges unrelated to the guilty plea.  He

reiterated that Buttolph understood that appellate review was limited to the

voluntariness of his guilty plea, the jurisdiction of the court and the legality of the

sentence.  (*Id.* at 11, 12).  He also noted on the record that there were hours spent

discussing "various issues attendant to the plea" and that Buttolph had the benefit

of his counsel as well as the advice of a second attorney from trial counsel's firm.

(*Id.* at 12, 13).  Counsel also noted that Buttolph fully discussed the plea offer with

his parents.  (*Id.* at 13).

Further, the plea hearing colloquy fully aligns with the written plea agreement and colloquy, which was made part of the record.  Therein, Buttolph agreed to enter a plea of guilty to third-degree murder, agreed that the information in the Affidavit of Probable Cause was true and correct, indicated that he understood the nature of the charges to which he was pleading guilty and, significantly, waived a recitation of the factual basis for the charges against him. (Doc. 31-13, 1-5).  He affirmed that he understood that by pleading guilty he was giving up various constitutional rights such as the right to a jury trial, the right to the presumption of innocence, the right to cross-examine all Commonwealth witnesses, the right to present evidence, and the right to file pretrial motions. (*Id.* at 3).  He fully responded to every question on the form, placed his initials on each page, and affixed his signature to the last page.  (*Id.* at 1-5).

Buttolph wholly fails to rebut the presumption of correctness of the facts garnered during the guilty plea proceedings with clear and convincing evidence. The Superior Court's decision is objectively reasonable in light of the evidence in state court and reflects a reasonable determination of the facts.

Based on the above, we conclude that the state court's determination that Buttolph failed to demonstrate that counsel's actions or inactions resulted in his

entering a guilty plea unknowingly or involuntarily was neither contrary to, nor an

unreasonable application of, clearly established federal law as determined by the

Supreme Court.  Nor did it result in an unreasonable determination of the facts in

light of the testimony elicited during the plea colloquy hearing and the written plea

colloquy and agreement.

## IV.   <u>CERTIFICATE OF APPEALABILTY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a

certificate of appealability ("COA"), an appeal may not be taken from a final order

in a proceeding  under 28 U.S.C. § 2254.  A COA may issue only if the applicant

has made a substantial showing of the denial of a constitutional right.  28 U.S.C. §

2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of

reason could disagree with the district court's resolution of his constitutional

claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further."  *Miller-El*, 537 U.S. 322.  Buttolph fails to

demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent him from

appealing the order denying his petition so long as he seeks, and obtains, a

certificate of appealability from the Third Circuit Court of Appeals.  *See* FED. R.

APP. P. 22(b)(1).

## V.   **CONCLUSION**

For the reasons set forth above, the petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 will be denied.

A separate Order shall issue.